the date Mr. Mustain-Wood was discharged from the hospital following his cardiac surgery on October 14, 2009." However, we did not find documentation of Mr. Mustain-Wood seeing Dr. McNeil after the November 18, 2009 visit in the records subsequently received from your office on September 7, 2010. Therefore, it is apparent that Dr. McNeil's letter was written at your or Mr. Mustain-Wood's request, to support your client's claim for benefits (176)

Nevertheless, regarding Dr. McNeil's statement about Mr. Mustain-Wood not being able to return to work because of his participation in cardiac rehabilitation, attending cardiac rehabilitation sessions does not alone provide evidence of Disability as defined by the Group Policy. Such forms of treatment can be scheduled for before or after work hours or an arrangement can be made with employers in consideration of necessary physical rehabilitation sessions (176).

53.     Defendant's denial of benefits for the period of time that Plaintiff was undergoing cardiac rehabilitation did not consider that the months-long process required Plaintiff to perform a workout that left him too fatigued to work. Defendant made no further inquiries of Dr. McNeil and never obtained any records from the provider of cardiac rehabilitation services (despite having an authorization to do so).

54.     The Appeal Letter disregarded Dr. Robinson's research, analysis, and findings in their entirety, on the sole basis that he did not conduct formal psychiatric testing (179).

55.     Defendant never considered, evaluated, or offered Partial Disability or Mental Disorder benefits to Plaintiff. Defendant's position from the beginning has been that upon expiration of the elimination period in January, 2010, Plaintiff has been completely able to return full-time to the material and substantial duties of his own occupation.

### I.     THE STANDARD OF REVIEW IN THIS CASE IS *DE NOVO.*

In the Tenth Circuit, it has been held that ERISA is preempted by § 10-3-1116, C.R.S., and the standard of review in disability cases is now *de novo*. ***McClenahan v. Metropolitan Life***

*Insurance Company*, 621 F.Supp.2d 1135, 1138 (D.Colo. 2009).

Plaintiff's position is that the *de novo* review standard applies to Plans issued <u>or renewed</u> after § 10-3-1116 went into effect August, 2008.  Plaintiff's Plan was renewed by his law firm on March 1, 2009.  Plaintiff's claim for LTD benefits is based on an October 7, 2009 date of disability.  Plaintiff's administrative remedies were not exhausted until the denial of his appeal in October, 2010, after which he filed suit.

Defendant's position is that because the Plan was issued in 1995, the standard of review is arbitrary and capricious per language in the Plan conferring discretion on the Plan fiduciary/administrator.   Defendant relies on the Colorado District Court opinion in *McClenahan, supra*.

On closer examination, however, it is apparent that *McClenahan* did not even really address the issue.  *McClenahan* held that the Colorado statute could not be applied retroactively to the plan in that case, because:

> 10-3-1116, C.R.S., became effective August 6, 2008, after all of the events relevant to the present case had occurred, including the filing of the present lawsuit.  If this statute is applicable to this case, then the statute is applicable retroactively.

In contrast, Mr. Mustain-Wood became disabled October 6, 2009, more than a year after § 10-3-1116 became effective.  His claim would have accrued, at the earliest, when LTD benefits were denied by Defendant, almost two years after § 10-3-1116 became effective.  *See* ***Fancher v. Clark***, 127 F.Supp. 452, 460 (D.Colo. 1954)(stating: "Changes in procedural or remedial law are generally to be regarded as immediately applicable to existing causes of action and *not merely to those which may accrue in the*

- 14 -

*future . . ."*)(emphasis added). Indeed, this proposition is so black letter it is hard to find a reported decision stating the obvious – the law in effect at the time a claim accrues is the substantive law applicable to the claim.

In ***Bray v. Sun Life and Health Ins. Co.***, 08-cv-02335-WYD-CBS (August 3, 2011 Order) (copy attached as Exhibit B), the Court engaged in an analysis of this issue more relevant to this case, finding that because "the policies in this case were issued prior to the August 6, 2008 effective date of the Colorado statute, the Colorado statute is in applicable." ***Bray*** did not deal with a renewal of the policy after the August 6, 2008 date. However, it relied on a recent Illinois case that did: ***Garvey v. Piper Rudnick LLP Long Term Disability Ins. Plan***, 08 C 1093 (March 25, 2011 Order) (attached as Exhibit C).

***Garvey*** dealt with an insurance regulation nearly identical to the *de novo* standard provision in § 10-3-1116. ***Garvey*** specifically addressed Garvey's contention that "the policy *renewed* on January 1, 2006, after the regulation became effective" and was therefore subject to the regulation. Garvey lost on this issue because he failed to provide any evidence to the court that the policy was annually renewable and that it had, in fact, been renewed. The court then found that "Accordingly, the relevant policy did not *renew* on January 1, 2006, which means that the policy is not subject to Section 2001.3 based on a supposed renewal occurring on that date."

Here, Plaintiff has directed the Court to a specific page in the administrative record reflecting that the Plan renews every 36 months and that the last renewal was on March 1, 2009. Also, the parties have stipulated that the plan renewed on March 1, 2009.

Finding that § 10-3-1116, a Colorado statute, applies to plans renewed after August 6,

- 15 -

2008, comports with Colorado law. In *Coffman v. State Farm Mut. Auto. Ins. Co.*, 884 P.2d 275 (Colo. 1994), the Colorado Supreme Court held that household exclusion clauses in automobile insurance policies *renewed* after the effective date of § 10-4-418, C.R.S. (which allowed such exclusions) are valid.

Here, tri-annual renewal of Mustain-Wood's LTD policy occurred between the date of enactment of § 10-3-1116 and accrual of his claim. The LTD policy renewed every three years, and renewed on March 1, 2009. This date is after the statute became effective and before Mustain-Wood's claim accrued. The statute clearly applies to Mustain-Wood's claim and the standard of review is *de novo*.

### III.   PLAINTIFF HAS MET THE POLICY DEFINITION OF DISABLED.

#### A.   PLAINTIFF WAS DISABLED FROM HIS OWN OCCUPATION UNTIL HIS CARDIAC REHABILITATION WAS COMPLETED ON JUNE 21, 2010.

Plaintiff was required to undergo cardiac rehabilitation following his open heart surgery. Dr. McNeil prescribed cardiac rehabilitation and on March 17, 2010, in the middle of this rehabilitation, wrote Defendant a note stating Plaintiff was unable to work until completion of his cardiac rehabilitation.

Defendant speculates that Plaintiff could have found time to do his cardiac rehabilitation before and after work – as if this was solely a scheduling issue. Cardiac rehabilitation, as the Administrative Record reflects, involves Plaintiff rebuilding his endurance and heart muscle to reduce the fatigue he experienced due to the reduced ejection fraction and other cardiac anomalies remaining after his open-heart surgery. As is obvious from the 21 weeks required to

complete the rehabilitation, this process takes time, like any conditioning program. Even upon completion, the record is well-documented that Mr. Mustain-Wood experienced severe fatigue even on working two days, not as an attorney representing a party in litigation; only as a mediator.

Neither physician who reviewed the records sent by Defendant disputed the two treating cardiologists opinions that Plaintiff could not work until completion of his cardiac rehabilitation. Neither physician was even sent the report from Sally Schneider, J.D., that specifically described the stress experienced by Mustain-Wood in his job. Defendant utterly disregarded Mustain-Wood's descriptions of how exhausting the cardiac rehabilitation was, and that he experienced chest pain even with the few calls he took during cardiac rehabilitation from other lawyers in his firm regarding pending cases.

Defendant's denial of benefits for the period of time Plaintiff was undergoing cardiac rehabilitation, not working, and not earning any income, was arbitrary and capricious for the reasons stated above.

### B. PLAINTIFF REMAINS DISABLED FROM HIS OWN OCCUPATION.

Defendant's evaluation of Plaintiff's ongoing disability has been arbitrary and capricious, not to mention simply wrong, for a number of reasons.

First, Defendant has taken a completely adversary position to Plaintiff, rather than acting as a Plan fiduciary. In *Metro. Life Ins. Co. v. Glenn*, 554 U.S. 105, 111 (2008), the Supreme Court explained that, in the context of ERISA, courts "should consider a benefit determination to be a fiduciary act (i.e., an act in which the administrator owes a special duty of loyalty to the plan

beneficiaries)." Furthermore, as the Supreme Court observed in *Varity Corp. v. Howe*, 516 U.S. 489, 506 (1996):

> ERISA requires a "fiduciary" to "discharge his duties with respect to a plan solely in the interest of the participants and beneficiaries." ERISA § 404(a), 29 U.S.C. § 1104(a)(1).

In this case, Defendant has across-the-board disregarded Plaintiff's evidence and failed to inform Plaintiff of his obvious qualification for Partial Disability benefits. Defendant gave absolutely no weight to Plaintiff's statements and the report of Sally Schneider, J.D. detailing the material and substantial duties of his occupation. Defendant did not even supply this information to its vocational and medical experts.

Defendant completely disregarded Dr. Robinson's research, analysis and conclusions about the clear connection between the stress of Plaintiff's work and his heart condition. Defendant's own psychology expert, Dr. Grant, opined that Plaintiff should change his job duties to avoid this stress, characterizing it as a "lifestyle choice." Defendant stated that it disregarded Dr. Robinson's evaluation in its entirety solely because no formal psychological testing was done, even though the evidence is obvious that Mr. Mustain-Wood suffers physical symptoms, loss of sleep, fatigue, chest pain, with stress, lack of mental acuity, and that his anxiety about experiencing this stress has patently prevented him from returning to litigation work at great financial loss.

Defendant's Appeal Letter claims that Plaintiff somehow coerced Dr. McNeil into issuing the March 17, 2010 letter stating Plaintiff was unable to work until he completed his cardiac

- 18 -

rehabilitation. Defendant, therefore, disregarded Dr. McNeil's and Dr. Doucet's opinions that Plaintiff needed to be off work until a stress test was performed after cardiac rehabilitation was completed.

Defendant's Appeal Letter arbitrarily claims that Plaintiff does not have "any significant symptoms after his cardiac surgery," contrary to well-documented symptoms described in Dr. Doucet's chart and the Administrative Record, including when Plaintiff works just two days per week as a mediator, and symptoms before and during the times Plaintiff was required to attend to prior litigation matters. Dr. Harrison pointed out that post-operative symptoms of "chest discomfort and emotional distress" were the reasons Drs. McNeil and Doucet "judged that the claimant should not return to his previous employment."

In this case, the Defendant has argued that Plaintiff's own occupation is as an "Attorney." The problem is that the policy does not limit Plaintiff's "own occupation" to "Attorney" – the Plan clearly looks to the material and substantial duties of Mustain-Wood's actual work at the time of his disability. The Plan never uses the word "lawyer" or "attorney" and never says Plaintiff's job duties are those done by an average or hypothetical attorney.

Despite this, Defendant gave its vocational expert no information on Plaintiff's actual job duties – soliciting a generic definition of "Attorney" job requirements under the Dictionary of Job Titles. Defendant purposefully limited its analysis to generic Dictionary of Job Titles' descriptions of work performed by lawyers. Defendant summarily rebuked Plaintiff's

- 19 -

offers of evidence from an attorney performing the same work and his psychologist regarding the actual material and substantial duties of his occupation, particularly with regard to handling severe stress, very long hours, regularly dealing with high conflict situations and people, and requiring a high level of mental performance.

The failure of an insurer to provide adequate, relevant, material information to its experts is evidence of arbitrary and capricious decision-making. ***Morrison v. United of Omaha Life Ins. Company***, 09-cv-02551-WYD-MJW (Colo. July 1, 2011 Order, page 9) (Exhibit D). The failure of an insurer to follow the recommendation of its experts and obtain further evaluation is evidence of arbitrary and capricious decision-making. ***Simon v. Prudential Ins. Co. of America***, 10-4286 (SRC) (N.J. July 20, 2011 Order, pages 6 - 8) (Exhibit E) (specifically noting that the plaintiff lawyer's material and substantial job duties included rainmaking that was not discussed anywhere in the defendant's occupational analysis of work performed by a typical, ordinary "Lawyer").

The Plan specifically defines "Material Duties" as "essential tasks, functions and operation, and the skills, abilities, knowledge, training and experience, generally required by employers from those engaged in a particular occupation." Law firms conducting high value/high conflict litigation require an ability to perform well under and withstand severe stress. "Stress" is identified by Defendant's vocational expert as a material duty of even a generic "Attorney." All the experts in this case, including Defendant's, agree that stress is a factor that contributes to cardiac disease. There is abundant evidence in the claims

file, including the opinions of Dr. Doucet, Dr. Robinson, attorney Sally Schneider, and even Dr. Grant, that Plaintiff cannot handle the level of stress of his own occupation, whether it be deemed trial attorney or attorney.  Mr. Mustain-Wood cannot represent clients in litigation without experiencing physical illness.  The proof of the pudding is that Mr. Mustain-Wood has tried to return to work, and cannot, despite having virtually no income as a result.

Insurance policies are construed under the same traditional principles that govern the interpretation of any contract.  When attempting to construe language in an insurance policy, the Court's ultimate goal is to ascertain and give effect to the reasonable expectations of the parties to the policy.  ***Pompa v. American Family Ins. Co.***, 520 F.3d 1139, 1143 (10th Cir. 2008).  The strongest indication of the parties' reasonable expectations is the policy language itself, and thus, the Court's first step is to give effect to the plain and ordinary meaning of its terms, as those terms would be understood by a person of ordinary intelligence.  ***MarkWest Hydrocarbon, Inc. v. Liberty Mut. Ins. Co.***, 558 F.3d 1139, 1143 (10th Cir. 2008).  In other words, the Court construes the policy language not as the insurer intended it to mean, but according to what the ordinary reader and purchaser would have understood it to mean.  ***Regional Bank of Colorado, N.A. v. St. Paul Fire & Marine Ins. Co.***, 35 F.3d 494, 496 (10th Cir. 1994).  When terms in a policy are susceptible to more than one reasonable interpretation, the Court must construe the ambiguous term against the drafter – the insurer – and in a manner that would promote, rather than deny, coverage.  ***Blackhawk-Central City Sanitation Dist. V. American Guarantee & Liab. Ins. Co.***, 214 F.3d 1183, 1191 (10th Cir. 2000).

- 21 -

Plaintiff reasonably understood the definition of "own occupation" to be the actual material and substantial duties of his actual work, including representing clients in litigation. The Plan language reasonably indicates that regardless of the job title, Plaintiff would be disabled from any work that would require similar duties. The Plan does not state that if Plaintiff remains working in the same profession, regardless of his material and substantial duties, he is not disabled.

Defendant also completely failed to offer Plaintiff Partial Disability benefits. For Partial Disability, Plaintiff does not need to be disabled from working in his own occupation – he merely needs to suffer more than a 20% loss of income due to "Sickness." Plaintiff certainly has met this standard and documented that fact with Defendant. Plaintiff simply cannot understand the rationale for Defendant not paying, considering, or offering Partial Disability benefits, or the complete omission of discussion of this benefit in the original denial or Appeal Letter.

Additionally, even if Plaintiff's stress intolerance were considered a Mental Disorder (due to anxiety, rather than the physical symptoms he suffers being a direct result of stress conditions on the job -- which is what Dr. Grant and Dr. Harrison appear to suggest), benefits for 24 months should have been authorized. Defendant did not even take any steps, despite its physicians' recommendations, to further evaluate Mr. Mustain-Wood's psychological condition.

Here, the evidence under either an arbitrary and capricious or *de novo* standard establishes that Plaintiff has been disabled from his own occupation, suffering Disability and/or Partial Disability. The evidence also establishes that Defendant has arbitrarily and capriciously failed to fairly evaluate the evidence presented by Plaintiff, including evidence clearly

establishing entitlement to Partial Disability.

WHEREFORE, Plaintiff respectfully requests as follows:

1. The Court determine that a *de novo* standard of review applies in this case;

2. That in the alternative, the Court find that Defendant operates under an apparent conflict of interest and is entitled to no deference under an arbitrary and capricious standard of review;

3. That Plaintiff is entitled to LTD benefits at the maximum benefit rate of $10,000 from January 9, 2010 through age 65;

4. In the alternative, that Plaintiff is entitled to LTD benefits at the maximum rate of $10,000 from January 9, 2010 through June 21, 2010 (his cardiac rehabilitation period), and thereafter at the Partial Disability rate of $9,576 per month through age 65;

5. In the alternative, that Plaintiff is entitled to LTD benefits at the maximum rate of $10,000 from January 9, 2010 through June 30, 2010 (his cardiac rehabilitation);

6. Costs;

7. Pre- and post-judgment interest; and

8. Attorney's fees.

Respectfully submitted this ___14th___ day of October, 2011.

                             CAMERON W. TYLER and ASSOCIATES, P.C.

                             By: __*s/ Cameron W. Tyler*_____

>Cameron W. Tyler
>3223 Arapahoe Avenue, Suite 300
>Boulder, Colorado 80303
>Tel:  (303) 443-2644
>Fax:  (303) 545-6979
>law@camtylerlaw.com
>*Attorneys for Plaintiff*

### CERTIFICATE OF SERVICE

I HEREBY certify that on this 14th day of October, 2011, a true and correct copy of the foregoing **OPENING BRIEF** was electronically served on the following:

Andrew Altschul
Buchanan Angeli Altschul & Sullivan LLP
321 SW 4th Ave., Suite 600
Portland, Oregon 97204
Tel: (503) 974-5015
Fax: (971) 230-0337
andrew@baaslaw.com
*Attorneys for Defendant*

>*/s/ Jan F. Guynn*
>Jan F. Guynn, Paralegal