IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
**Senior Judge Wiley Y. Daniel**

Criminal Action No. 10-cv-02945-WYD-KLM

RANDALL C. MUSTAIN-WOOD,

    Plaintiff,

v.

NORTHWESTERN MUTUAL LIFE INSURANCE COMPANY,

    Defendant.

_____

**ORDER**
_____

THIS MATTER is before the Court on plaintiff, Randall C. Mustain-Wood's, review of defendant, Northwestern Mutual Life Insurance Company's ("Northwestern") denial of disability benefits to Mustain-Wood. For the reasons stated below, I REVERSE Northwestern's decision to deny Mustain-Wood's long-term disability claim ("LTD claim") and REMAND the case to Northwestern for the sole and limited purpose of determining the exact amount of benefits owed to Mustain-Wood pursuant to the terms and conditions of his disability insurance policy.

**BACKGROUND**

On January 13, 2011, Mustain-Wood filed an Amended Complaint [ECF No. 15] against Northwestern, alleging that it violated the Employee Retirement Income Security Act of 1974 ("ERISA"), as amended, 29 U.S.C. § 1132, *et seq.*, and Colorado Revised Statutes §§ 10-3-1115 and 10-3-1116, by failing to pay him disability benefits pursuant to his disability insurance policy.

Mustain-Wood is a 65 year-old family law attorney.  Mustain-Wood's law firm, Mustain-Wood, Walker & Schumacher, LLC, purchased a group long term disability insurance policy ("the policy") [ECF No. 26-2, pp. 192-219] from Northwestern which became effective on March 1, 1995.  On March 1, 2009, Mustain-Wood's law firm renewed the policy with Northwestern.

On October 7, 2009, Mustain-Wood experienced "congestive heart failure with marked pulmonary hypertension due to chronic valvular heart disease and aortic stenosis." ECF No. 33, p. 2, ¶ 2.  On October 8, 2009, Mustain-Wood was admitted to a hospital.  On October 13, 2009, Dr. Thomas L. Matthew, performed aortic valve replacement surgery and thoracic aortic aneurysm repair on Mustain-Wood.  On November 13, 2009, Dr. John A. McNeil, Mustain-Wood's emergency room cardiologist, prescribed Mustain-Wood 36 sessions of cardiac rehabilitation.  Mustain-Wood commenced cardiac rehabilitation on January 20, 2010.

In November of 2009, Mustain-Wood submitted his LTD claim to Northwestern stating that he became disabled, by way of congestive heart failure, on October 8, 2009.  Northwestern denied Mustain-Wood's LTD claim on January 20, 2010, stating that Mustain-Wood did not qualify for long term disability benefits because he was not disabled for the requisite 90 day period under the policy. ECF No. 26-2, p. 97.  Mustain-Wood appealed the denial of his LTD claim on July 27, 2010.  On October 21, 2010, Northwestern's Administrative Review Unit ("ARU") upheld the denial of his LTD claim.

On December 6, 2010, Mustain-Wood filed his Original Complaint [ECF No. 1] against Northwestern, alleging that Northwestern's denial of his LTD claim violates ERISA.  On January 13, 2011, Mustain-Wood filed an Amended Complaint [ECF no. 15]

alleging that Northwestern's denial of his LTD claim violates ERISA and COLO. REV. STAT. §§ 10-4-1115 and 10-4-1116.  On October 14, 2011, Northwestern filed its Opening Brief [ECF No. 32], arguing that:  (1) the applicable standard of review in this case is abuse of discretion; (2) based on the administrative record, the denial of Mustain-Wood's LTD claim does not constitute an abuse of discretion; and, (3) Mustain-Wood's second claim for relief under and COLO. REV. STAT. §§ 10-4-1115 and 10-4-1116 fails because ERISA pre-empts any claim under those statutes.  That same day, Mustain-Wood filed his Opening Brief [ECF No. 33] arguing that:  (1) the applicable standard of review is *de novo*; (2) he is disabled under the policy's terms; and, (3) he should have received partial disability benefits under the policy.  On February 14, 2013, I held a Motions Hearing in which the parties presented their arguments in open court.

## ANALYSIS

### A.  Applicability of COLO. REV. STAT. 10-3-1116

The issue of whether COLO. REV. STAT. § 10-3-1116 applies in this action is important because:  (1) Northwestern argues that ERISA preempts Mustain-Wood's claims under the statute; and, (2) Mustain-Wood argues that under the statute, the appropriate standard of review is *de novo*.  Pursuant to COLO. REV. STAT. § 10-3-1116:

> (1) A first-party claimant as defined in section 10-3-1115 whose claim for payment of benefits has been unreasonably delayed or denied may bring an action in a district court to recover reasonable attorney fees and court costs and two times the covered benefit.
>
> (2) An insurance policy, insurance contract, or plan that is issued in this state that offers health or disability benefits shall not contain a provision purporting to reserve discretion to the insurer, plan administrator, or claim administrator to interpret the terms of the policy, contract, or plan or to determine eligibility for benefits.

>(3) An insurance policy, insurance contract, or plan that is issued in this state shall provide that a person who claims health, life, or disability benefits, whose claim has been denied in whole or in part, and who has exhausted his or her administrative remedies shall be entitled to have his or her claim reviewed de novo in any court with jurisdiction and to a trial by jury.
>
>(4) The action authorized in this section is in addition to, and does not limit or affect, other actions available by statute or common law, now or in the future. Damages awarded pursuant to this section shall not be recoverable in any other action or claim.
>
>(5) If the court finds that an action brought pursuant to this section was frivolous as provided in article 17 of title 13, C.R.S., the court shall award costs and attorney fees to the defendant in the action.
>
>(6) If any provision of this section or its application to any person or circumstance is held illegal, invalid, or unenforceable, no other provisions or applications of this section shall be affected that can be given effect without the illegal, invalid, or unenforceable provision or application, and to this end the provisions of this section are severable.
>
>(7) The general assembly declares that this section is a law regulating insurance.

COLO. REV. STAT. § 10-3-1116 became effective August 6, 2008. Mustain-Wood's policy became effective March 1, 1995. Thus, in order to apply to Mustain-Wood's policy, the statute would have to apply retroactively. The United States Court of Appeals for the Tenth Circuit has held that COLO. REV. STAT. § 10-3-1116 does not apply retroactively. *McClenahan v. Metropolitan Life Ins. Co.*, 416 Fed. Appx. 693, 698 (10th Cir. 2011) (internal quotations and citations omitted) ("While an express declaration of retroactivity isn't required, there is no indication that the statute before us [COLO. REV. STAT. § 10-3-1116] was ever intended to apply to prior conduct . . . So it is

clear under Colorado Supreme Court precedent, the statute here can't be applied to MetLife's claim determination, and the district court properly reviewed MetLife's decision in this case for abuse of discretion"). I agree with the Tenth Circuit on this issue and have stated so on at least two prior occasions. *Morrison v. United of Omaha Life Ins. Co.*, 2011 U.S. Dist. LEXIS 71867, *17-18 (D. Colo. July 7, 2011) (citing *McClenahan*, 416 Fed. Appx. at 698) ("[T]he Tenth Circuit has conclusively held that the Colorado Statute [COLO. REV. STAT. § 10-3-1116] does not apply retroactively") ; *Bray v. Sun Life & Health Ins. Co.*, 2011 U.S. Dist. LEXIS 85121, *4-5 (D. Colo. Aug. 3, 2011) (citing *McClenahan*, 416 Fed. Appx. at 698) ("I agree with the Defendants that C.R.S. § 10-3-1116 is inapplicable because the Tenth Circuit has conclusively held that the Colorado statue does not apply retroactively"). Mustain-Wood concedes this point, yet argues that because his law firm renewed the policy while COLO. REV. STAT. § 10-3-1116 was in effect, the renewed policy is subject to the terms and conditions of the statute. I disagree.

Mustain-Wood does not offer any binding precedent on this issue and I am not aware of any. As I stated in *Bray*, "[t]o find that the Colorado statute applies to a policy issued prior to the effective date of the statute would alter the defined obligations and duties entered into by the parties and would, in effect, create new and enhanced obligations and duties for [the parties]." 2011 U.S. Dist. LEXIS 85121 at *5 (citation omitted). I find a similar situation here. To apply COLO. REV. STAT. § 10-3-1116 to a plan that was issued 13 years prior to the statute's effective date, would impose new obligations and restrictions on the parties that were not contemplated at the time the parties executed the policy. If renewal of a policy automatically incorporates any and all

statues affecting a policy which were not in effect at the time of the policy's issuance, then at the time of issuance, neither party can reasonably be expected to know its obligations under a policy that may or may not be automatically altered at some future date based on the whim of Colorado's legislature.  Parties should know and understand their obligations under a policy at the time of issuance.  Therefore, I find that renewal of the policy does not automatically render it susceptible to the terms and conditions found in COLO. REV. STAT. § 10-3-1116, and the statute does not apply to the present action.  Because the statute is inapplicable, I need not address the issue of whether ERISA preempts COLO. REV. STAT. § 10-3-1116.

### B.  Mustain-Wood's ERISA Claim

#### 1.  Legal Standard

"ERISA was enacted to promote the interests of employees and their beneficiaries in employee benefit plans, and to protect contractually defined benefits." *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 113 (1989).  Under ERISA, a plan beneficiary has a right to seek review of an administrator's denial of benefits in federal district court. 29 U.S.C. § 1332(a).  Though ERISA grants such a right, it does "not establish the standard of review for such decisions." *Chambers v. Family Health Corp.*, 100 F.3d 818, 824-25 (10th Cir. 1996).

In *Firestone*, the United States Supreme Court established the basic framework for determining the standard of review in ERISA cases that challenge the denial or termination of benefits.  The Supreme Court stated that "a denial of benefits challenged under § 1132(a)(1)(B) is to be reviewed under a de novo standard unless the benefit plan gives the administrator or fiduciary discretionary authority to determine eligibility for

benefits or to construe the terms of the plan." 489 U.S. at 115. If the plan "gives the administrator discretionary powers, the district court reviews the administrator's decisions under an arbitrary and capricious standard."[1] *Ray v. Unum Life Ins. Co. of Am.*, 314 F.3d 482, 485 (10th Cir. 2002) (citations omitted). Thus, determining the applicable standard of review begins with analysis of the policy's terms. Section 8 of Mustain-Wood's Plan, entitled "Allocation of Authority," states:

> Except for those functions which the Policy specifically reserves to the Policyowner, the Company has full and exclusive authority to control and manage the Policy, to administer claims, and to interpret the Policy and resolve all questions arising in the administration, interpretation, and application of the Policy.
>
> The Company's authority includes, but is not limited to:
>
> * The right to resolve all matters when a review has been requested;
>
> * The right to establish and enforce rules and procedures for the administration of the Policy and any claim under it;
>
> * The right to determine:
>
>   (1) Your eligibility for insurance;
>
>   (2) Your entitlement to benefits;
>
>   (3) The amount of benefits payable to you;
>
>   (4) The sufficiency and the amount of information the Company may reasonably require to determine 1, 2, or 3 above.
>
> Subject to the review procedures of the Policy, any

---

[1] In the United States Court of Appeals for the Tenth Circuit, the arbitrary and capricious standard of review is synonymous with the abuse of discretion standard of review. *Loughray v. Hartford Group Life Ins. Co.*, 366 Fed. Appx. 913, 923 (10th Cir. 2010) (citation omitted) ("In the ERISA context, we treat the abuse of discretion and the arbitrary and capricious standards of review as interchangeable").

>> decision the Company makes in the exercise of the
>> Company's authority is conclusive and binding.

ECF No. 26-2, p. 216. This provision's plain language "gives the administrator or fiduciary [Northwestern] discretionary authority to determine eligibility for benefits or to construe the terms of the plan." *Firestone*, 489 U.S. at 115. Thus, under *Firestone*, I am required to review Northwestern's denial of Mustain-Wood's LTD claim under an abuse of discretion standard.

Under an abuse of discretion standard, "the federal courts are limited to the 'administrative record' – the materials compiled by the administrator in the course of making [the] decision." *Hall v. UNUM Life Ins. Co. of Am.*, 300 F.3d 1197, 1201 (10th Cir. 2002). "[W]e uphold an administrator's decision 'so long as it is predicated on a reasoned basis.'" *Loughray,* 366 Fed. Appx. at 923 (quoting *Adamson v. Unum Life Ins. Co. of Am.*, 455 F.3d 1209, 1212 (10th Cir. 2006)). "[T]here is no requirement that the basis relied upon be the only logical one or even the superlative one." *Id*. "Thus, we only ask whether the administrator's decision resides somewhere on a continuum of reasonableness—even if on the low end." *Id.* (quotations and citations omitted).

### 2. The Policy's Terms

The policy provides that the insured shall receive disability benefits, if disabled, on the "91st day of Disability in the first 120 days after the date [the insured] become[s] Disabled." ECF No. 26-2, p. 199. According to the policy, an insured may qualify as disabled in one of three ways: (1) under the policy's "Own Occupation Definition of Disability"; (2) under the policy's "Any Occupation Definition of Disability"; or, (3) under the policy's "Partial Disability Definition". ECF No. 26-2, p. 187. The definition that bears on this matter is the policy's definition of "Own Occupation Definition of Disability."

With respect to "Own Occupation:"

> You are Disabled from your Own Occupation, if, as a result of Sickness, Injury, or Pregnancy, you are unable to perform with reasonable continuity the Material Duties of your Own Occupation.
>
> \* \* \* \*
>
> **Own Occupation**. This is any employment, business, trade, profession, calling or vocation that involved the Material Duties of the same general character as your regular and ordinary employment with your Employer. Your Own Occupation is not limited to your specific job with your Employer or to your specific area of specialization, interest or expertise within the general occupation.

ECF No. 26-2, pp. 187-88.

### 3. Northwestern's Denial of Mustain-Wood's LTD Claim

Northwestern based its decision to deny Mustain-Wood's LTD claim on a "Group Disability Claim Attending Physician Statement" [ECF No. 26-1, pp. 132-33] filled out by Dr. McNeil, Mustain-Wood's emergency room cardiologist. The statement, dated December, 30, 2009, is a two page form. The statement contains: (1) various blanks for a doctor to fill in with short answers; (2) numerous questions in which a doctor must circle one of several already provided for answers; and, (3) boxes in which a doctor must check "yes" or "no" in response to certain questions. Box C, under Section 1: Diagnosis, calls for the doctor to list the patient's physical limitations, if any. Dr. McNeil filled in the box with "no limitations." *Id.* at 132. Under Section 5: Level of Functional Impairment, Dr. McNeil stated that Mustain-Wood had "no physical restrictions." *Id.* Under Section 10: Prognosis, Dr. McNeil stated that Mustain-Wood could return to part-time and full-time work at "[a]ny time." *Id.* at 133.

On January 20, 2010, Northwestern sent Mustain-Wood a letter regarding his LTD claim. ECF No. 26-2, pp. 97-98.  Northwestern stated that "the issue upon which we must focus is whether or not the medical documentation currently available to us provides satisfactory written proof that you were disabled from your own occupation due to your medical condition." *Id.* at 98.  Based on Dr. McNeil's report, Northwestern stated that it had "no option but to deny liability on [Mustain-Wood's claim] at this time." ECF No. 26-2, p. 97.

On July 27, 2010, Mustain-Wood appealed the decision to Northwestern's ARU. On October 21, 2010, Northwestern sent a letter [ECF No. 26-2, pp. 7-21] to Cameron W. Tyler, Mustain-Wood's counsel, stating that the ARU upheld the initial decision to deny Mustain-Wood's LTD claim.  The letter states, in pertinent part:

> In light of the Group Policy's specific definition of Own Occupation, although Mr. Mustain-Wood may have trained and worked as an attorney practicing Family Law, *The Standard is not limited to considering how he performed his prior positions working in Family Law as an Attorney or as a "Divorce Law Litigator," nor are we limited to considering the types of cases he handled as "high conflict/high asset/children with special needs litigation" cases.*
>
> \* \* \* \*
>
> *In consideration of your client's claims for LTD benefits, we are not limited to looking at the way Mr. Mustain-Wood performed his job for Mustain-Wood, Walker & Schumacher, LLC.*  We must consider whether he suffers from a Physical Disease, Injury, or Mental Disorder that impairs his ability to *perform the Material Duties of an Attorney as it is usually performed in the general economy.*
>
> In other words, Own Occupation, as it is used in the context of the policy language *is not workplace or employer specific.* Rather, it refers to a set of duties as they are performed in a typical industry setting.  *Accordingly, we are not required to focus on any specific category of expertise or any particular*

> *types of cases that Mr. Mustain-Wood routinely handled in the past* as did Dr. Robinson and Ms. Schneider, because the Group Policy does not provide disability coverage for own specialty, as may be the case under other disability policies.

ECF No. 26-2, p. 13, ¶¶ 5, 7-8 (emphasis added).  Thus, the ARU analyzed whether Mustain-Wood was disabled based on the general duties of a lawyer and did not take into account his specific duties as a family law practitioner.  The ARU concluded that Mustain-Wood was not disabled during the requisite 90 day period under the policy and therefore denial of his LTD claim was proper.

### 4.  Review of Northwestern's Denial of Mustain-Wood's LTD Claim

I agree with the ARU that the policy's terms and conditions confine the analysis of Mustain-Wood's LTD claim to the general duties of a lawyer, not Mustain-Wood's specific duties as a family law practitioner.  That said, I disagree with the ARU's conclusion for several reasons.

First, the practice of law, whether civil or criminal, requires:  (1) a high degree of cognitive ability and function; (2) precise analytical skills; (3) the ability to clearly and succinctly communicate arguments and ideas orally and in writing; and, (4) the ability to effectively handle multiple tasks simultaneously.  Most importantly, an attorney must have the ability to cope with rising levels of stress and anxiety that vary on an hourly basis.  An attorney, regardless of what he or she practices, who suffers congestive heart failure is not likely to be able to resume the full gamut of his or her duties within 90 days of congestive heart failure.  The duties and stressors of an attorney require him or her to operate at optimum levels of efficiency.  Save the rare the occasion, this is not possible within 90 days of congestive heart failure.

Second, Mustain-Wood attempted to return to work, in a limited capacity, and the effects of congestive heart failure prevented him from working. Dr. Jamie Doucet of the Colorado Cardiovascular Center, who rendered a second opinion, issued a report on July 21, 2010, regarding Mustain-Wood's heart condition. Dr. Doucet stated, "[Mustain-Wood] has tried to return to work in a relatively low stress position as a mediator at his practice on Tuesdays and Fridays, but even with those interactions, he has experienced undue chest discomfort, tightness and some anxiety." ECF No. 26-1, p. 43. Dr. Doucet also stated that, "[o]n my review of his records and today's history and physical, *it does not appear to me that Randy's heart has reverted to normal.*" *Id.* (emphasis added). Dr. Doucet further stated that "[w]e know that Randy's heart *is still structurally abnormal . . .* ". *Id.* (emphasis added).

Third, Dr. McNeil wrote a letter [ECF No. 26-1, p. 118] on March 17, 2010, stating that Mustain-Wood was unable to return to work. Specifically, the letter states, "Randy Mustain-Wood is currently enrolled and taking part in a cardiac rehabilitation program. Due to his commitment to his recovery he is unable to work during his treatment period. Mr. Mustain-Wood is due to complete his program June 13, 2010." *Id.* This letter contradicts Dr. McNeil's statements in the Group Disability Claim Attending Physician Statement [ECF No. 26-1, pp. 132-33] in which he states that Mustain-Wood can return to work full-time or part time at any time. The ARU discounted this letter because it contradicts Dr. McNeil's earlier statements and because there was no evidence that Mustain-Wood sought treatment from Dr. McNeil subsequent to the Northwestern's initial denial of his LTD claim. Though Dr. McNeil's most recent statement contradicts with his previous statement, it coincides with Dr. Doucet's opinion that Mustain-Wood is

not able to return to work.  Thus, two doctors state that Mustain-Wood is not able to return to work.

Fourth, at the February 14, 2013, Motions Hearing, Northwestern's counsel proposed that Mustain-Wood *chose* not return to work as family law practitioner, and he could have chosen to practice law in another area because he was qualified to do so as a "general practitioner."  I disagree.  While attorneys are not allowed to say they "specialize" in a certain area of law, the reality is that the majority of attorneys practice within a narrow field of the law.  This serves several practical purposes; the most important being that by practicing in a narrow field of law, an attorney hones his or her knowledge of the subject matter over years of practice such that he or she is competent in that field and can effectively litigate claims on that subject matter when presented with diverse and complicated sets of fact patterns.  With that said, it is counterintuitive to hold that an attorney such as Mustain-Wood, who has practiced family law his entire legal career, could *immediately* switch to and *successfully* practice in another area of the law without serious malpractice concerns.  However, this is the precise argument Northwestern presented at the Motions Hearing.  Northwestern's counsel specifically stated at the hearing that Mustain-Wood has a skill set that "would make him a very competent attorney I'm sure in many, many fields in many, many ways, where he could perform that way."  I agree that Mustain-Wood has a skill set that could transfer to other areas of the law.  However, it is not reasonable to believe that Mustain-Wood could immediately drop his family law practice, switch to another area of law, and begin *effectively and competently* practicing law, *all within 90 days of congestive heart failure*. To be clear, I express no opinion as to Mustain-Wood's intellectual ability or legal

prowess. To believe Northwestern's argument, I would have to disregard: (1) the inherent difficulties involved with practicing law; and, (2) Mustain-Wood's physical condition after heart surgery. I will not do so.

## CONCLUSION

Based on my analysis above, I find that starting on October 8, 2009, Mustain-Wood had a physical injury and/or disease that impaired his ability to perform the material duties of an attorney as it is usually performed in the general economy. I also find that Mustain-Wood was disabled for the requisite 90 day period under the policy: from October 8, 2009, to January 6, 2010. Therefore, Mustain-Wood qualifies as disabled under the terms and conditions of the policy. I find that Northwestern's decision to uphold its original denial of Mustain-Wood's LTD claim was an abuse of discretion and such decision does not lie anywhere on the "continuum of reasonableness." *Loughray*, 366 Fed. Appx. at 923.

Under the policy's terms and conditions, the insured's maximum benefit period is determined by the insured's age when his disability begins. ECF No. 26-2, p. 199. Mustain-Wood was born on January 23, 1948. Thus, on October 8, 2009, the date his disability began, Mustain-Wood was 61 years old. The policy states that if the insured is 61 years old or younger when the disability begins, he is entitled to benefits "to age 65, **or** 3 years and 6 months, **if longer**." *Id.* (emphasis added). This provision of the policy sets out two maximum benefit periods: (1) until Mustain-Wood turns 65; and, (2) 42 months (three years and six months) from the date Mustain-Wood is first entitled to receive benefits. Thus, I must determine which maximum benefit period applies. Mustain-Wood is eligible for benefits under the policy starting on January 7, 2010, which

is the 91st day of his disability within the first 120 days that he became disabled. *Id.* If Mustain-Wood were to receive benefits until he turned 65, he would be entitled to 36 months and 16 days of benefits.[2] Because this maximum benefit period is shorter than the second maximum benefit period, 42 months, Mustain-Wood is entitled to 42 months of benefits. Accordingly, it is

ORDERED that Northwestern Mutual Life Insurance Company's denial of Randall Mustain-Wood's disability claim is **REVERSED**. It is

FURTHER ORDERED that this action is **REMANDED** to Northwestern Mutual Life Insurance Company for the sole and limited purpose of determining the exact amount of benefits owed to Mustain-Wood under the policy **from January 7, 2010**, **to July 7**, **2013**, which is the 42 month maximum benefit period. It is

FURTHER ORDERED that Northwestern Mutual Life Insurance Company shall determine the benefits owed to Mustain-Wood pursuant to the terms and conditions of the policy **on or before Friday**, **May 3**, **2013**. It is

FURTHER ORDERED that Northwestern Mutual Life Insurance Company **shall pay Mustain-Wood all benefits owed under the policy on or before Monday**, **June 3**, **2013**. It is

FURTHER ORDERED that the parties shall file a Joint Status Report **on or before Friday**, **June 14**, **2013**, indicating that Northwestern Mutual Life Insurance Company has complied with all directives set forth in this Order.

---

[2] Mustain-Wood turned 65 on January 23, 2013. Mustain-Wood is eligible for benefits starting on January 7, 2010. Thus, 36 months and 16 days elapsed between January 7, 2010, and January 23, 2013.

- 16 -

Dated: April 4, 2013.

BY THE COURT:

/s/ Wiley Y. Daniel
Wiley Y. Daniel
Senior U. S. District Judge